IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL CARBIDE COMPANY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Civil Action No. 3:15-cv-248 |
| EXETER CONSTRUCTION, LLC., and DENNIS B. BALLARD, | ) ) ) |
| Defendants. | ) |

**BRIEF IN SUPPORT OF MOTION FOR DEFAULT JUDGMENT AGAINST
DEFENDANTS EXETER CONSTRUCTION, LLC AND DENNIS B. BALLARD**

Neither Exeter Construction, LLC ("Exeter") nor Dennis B. Ballard ("Ballard"; collectively "Defendants") ever bothered to serve an answer or any other responsive pleading to Federal Carbide Company's ("FCC's") Complaint in this lawsuit despite being properly served with the Complaint months ago. As Ballard has repeatedly done before in other proceedings, Ballard ducked FCC's initial attempts to serve him with the Complaint, then once FCC was able to effectuate service, he ignored his legal obligations, failed to make an appearance or file a response. As such, this Court entered default against the Defendants almost three months ago. To date, this default has not been lifted.

Rather than lift the default, this Court should grant FCC's Motion for Default Judgment, enter a default judgment against Defendants in accordance with Rule 55(b) of the Federal Rules of Civil Procedure and schedule a non-jury hearing to determine the damages due in this case, including punitive damages and attorneys fees. Specifically, as set forth below, FCC is entitled to a default judgment because: (1) FCC's Complaint establishes this Court has jurisdiction; (2) FCC's Complaint states valid causes of action against Defendants; and (3) all relevant factors weigh in favor or this Court granting default judgment because: (i) denying a default judgment

will cause prejudice to FCC; (ii) Defendants have no meritorious defense; and (iii) Defendants' default is due to their culpable conduct.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

**A.     Defendants Induce FCC to Enter a Contract for the Project.**

FCC is a world leader in the manufacture of Cemented Tungsten Carbides and Tungsten Heavy Alloy components and maintains a fully integrated manufacturing complex in Tyrone, Pennsylvania.  See Complaint [ECF No. 1] at ¶¶ 13-14.  Because FCC was experiencing rapid growth, in 2014, FCC decided to build a new manufacturing facility, warehouse space and office space for FCC in Tyrone (the "Project").  See id. at ¶ 15.  As such, FCC approached Ballard regarding the ability of Exeter to serve as FCC's general contractor and manage all elements of the design, procurement and construction of the Project.  See id. at ¶¶ 16-17.

Ballard made numerous representations to FCC regarding Exeter's expertise, qualifications and experience in the design and construction of manufacturing facilities like the Project.  See id. at ¶ 19.  Specifically:

- Ballard represented to FCC that Exeter had heavy construction equipment, such as bulldozers, that it would devote to the Project.

- Ballard represented to FCC that Exeter had employees that it would devote to the Project.

- Ballard provided FCC with a document representing that Exeter had served as the full service general contractor for several projects described in that document.

- Ballard represented that Exeter had completed several design and build projects at Dover Air Force Base on time and on budget.

---

[1]     Further details surrounding Ballard's past pattern of litigation conduct, Defendants' wrongful conduct, and the harm Defendants have caused FCC are contained in FCC's Complaint (the "Complaint") filed on September 28, 2015 [ECF No. 1] and in FCC's "Brief in Opposition to Defendants' Motion to Set Aside Default" [ECF No. 16].  Both of these pleadings are incorporated herein by reference.

- Ballard represented that Exeter had completed a $3.5 million project at Dover Air Force Base which involved Exeter completely remodeling supply building #639 to include a roofing system, wall systems, exterior doors, overhead doors and interior fit-out of two new offices.

See id. at ¶¶ 19-24.

As a result of these representations, FCC entered into a "Design-Build Agreement for Engineering, Procurement and Construction Services" with Exeter on or around September 11, 2014 (the "Contract"). See id. at ¶ 36. However, all these representations were false. See id. at ¶¶ 25-37. Ballard and Exeter were not qualified for the Project; neither had ever designed and constructed a facility such as the Project. See Complaint at ¶¶ 27-35. Exeter is essentially only Ballard and has no other employees. See id. at ¶ 31.

**B.    Exeter Breaches the Contract, Renders Defective Work and Delays the Project.**

Exeter agreed to manage all elements of the design, procurement and construction of the Project and complete the Project within 200 days. See Complaint at ¶¶ 36-38; 42; Exhibit A, Contract at Article 1.68. After beginning the Project, Exeter showed up unprepared, failed to comply with contractual requirements, abandoned the Project at times, failed to pay subcontractors and performed defective work. See Complaint at ¶¶ 46-60. The Project fell far behind schedule. See id. at ¶¶ 60-70.

By the Contract's Completion Date of March 30, 2015, the Project was far from being completed; site preparation had not been completed and the concrete foundation had not been poured. See id. at ¶ 60. In July 2015 (months after the Completion Date), even though the Project was way behind schedule and was not even close to achieving Substantial Completion, Exeter abandoned the Project and shut down work on the Project so Ballard could go to Las Vegas. See id. at ¶ 69. FCC was left with no choice but to terminate the Contract on July 28, 2015 via a letter which set forth examples of Exeter's defaults and provided notice of FCC's

intent to bring claims against Exeter.  See id. at ¶ 71.

Immediately after being terminated, Exeter and Ballard began attempting to sabotage and shut down the Project, by among other things, threatening subcontractors to convince them not to work with FCC and destroying needed permits, drawings and specifications related to the Project rather than returning such documents to FCC as they were obligated.  See id. at ¶¶ 74-82.  As such, on July 29, 2015, FCC sent another letter to Exeter, demanding the return of all documents, drawings and permits to FCC immediately and providing notice of FCC's intent to hold Exeter responsible for all costs related to Exeter's breaches.  See id. at ¶¶ 80-81.

### C. The Court Enters Default Against the Defendants For Failing to Answer FCC's Complaint.

On September 28, 2015, FCC filed the Complaint.  The Complaint contained counts for fraudulent inducement, breach of contract, breach of warranty and specific performance and sought compensatory damages, attorneys' fees pursuant to an agreed-upon attorneys' fee provision, and punitive damages.  See Complaint at ¶¶ 89-127.  FCC attempted to serve Defendants with the Complaint via certified mail.  Ballard avoided these attempts by refusing to accept the mail.  See Exhibit 1, Declaration of Jason L. Richey ("Richey Decl.") at ¶ 5.

On October 6, 2015 (at a meeting between the parties that was attended by Defendants' counsel), FCC caused a copy of the summons and the Complaint to be personally served on Ballard.  See id. at ¶ 6-8; [ECF No. 6].  At that same time, FCC also caused a copy of the summons and the Complaint to be served on Exeter by personally serving Ballard, the president of Exeter.  [ECF No. 7].  As such, Defendants were required to file a responsive pleading to the Complaint within 21 days pursuant to Rule 12(a)(1)(A)(i) of the Federal Rules of Civil Procedure, i.e., October 27, 2015.

Neither Defendant ever filed an answer or other responsive pleading.  Moreover, neither

Defendants nor their counsel ever requested an extension of time to respond to the Complaint. See Exhibit 1, Richey Decl. at ¶ 10. As such, on November 12, 2015, FCC requested the Clerk enter default against both Defendants. [ECF No. 8]. On November 13, 2015, the Clerk entered default against both Defendants for failing to appear, plead or otherwise defend. [ECF No. 9]. On November 25, 2015, Defendants filed a Motion to Set Aside Default [ECF No. 10] and a Brief in Support [ECF No. 12]. That same day, Defendants' counsel finally entered an appearance. [ECF No. 11]. On December 14, 2015, FCC filed a Brief in Opposition to the Motion to Set Aside Default [ECF No. 16]. To date, this Court has not set aside the default.

## ARGUMENT

Under Federal Rule of Civil Procedure 55(b)(2), a court can enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. Entry of default judgment is left to the "sound judicial discretion" of the Court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984). Where defendants have failed to answer and defaulted, the court must accept as true the well-pleaded factual allegations of the complaint. See, e.g., Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990) (as a result of a default, "factual allegations of the complaint, except for those relating to the amount of damages, will be taken as true."); United States ex rel. Motley v. Rundle, 340 F. Supp. 807, 809 (E.D. Pa. 1972) ("By virtue of the default, the truth of these well-pleaded allegations is admitted. They may not be contested on the merits, and have the same effect as if established by proof.").

Before granting a motion for default judgment, a court must ensure that the complaint sets forth: (1) a prima facie showing of personal and subject matter jurisdiction; and (2) a valid cause of action. See Jimenez v. Rosenbaum-Cunningham, Inc., No. 07-1066, 2010 WL 1303449, at *4-5 (E.D. Pa. Mar. 31, 2010). If the court has jurisdiction and the complaint sets

forth a valid cause of action, the court must next determine whether it should enter default judgment by weighing the three factors set forth by the Third Circuit in Chamberlain v. Giampapa: (1) prejudice to the plaintiff; (2) whether the defendant has a meritorious defense; and (3) whether the defendant's default is due to culpable conduct.  210 F.3d 154, 164 (3d Cir. 2000). See also Kollmann v. Transtech Airport Solutions, Inc., No. 08-797, 2011 WL 6020168, at * 2 (W.D. Pa. Dec. 2, 2011) (citing Chamberlain and granting default judgment).  However, when a defendant has failed to respond to the complaint, this analysis is necessarily one sided.  See Anchorage Assocs. v. Virgin Island Bd. Of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990).

As set forth below, FCC is entitled to a default judgment because:  (1)  FCC's Complaint establishes this Court has jurisdiction; (2) FCC's Complaint states valid causes of action against Defendants; and (3)  all the Chamberlain factors weigh in favor or this Court granting default judgment.

**A.     FCC's Complaint Establishes this Court Has Jurisdiction.**

As an initial matter, this Court must determine if the well-pleaded allegations in the complaint demonstrate a prima facie showing of personal and subject matter jurisdiction. Jimenez, 2010 WL 1303449, at *4-5.  The Complaint shows this Court has jurisdiction.

The Complaint alleges complete diversity of citizenship among the parties and an amount in controversy exceeding $75,000.  See Complaint [ECF No. 1] at ¶¶ 7-10.  Thus, this Court has subject matter jurisdiction based on diversity of citizenship.  See 28 U.S.C. § 1332.

The Complaint also alleges Defendants have transacted business in the Commonwealth and have caused harm or tortious injury within the Commonwealth by acts within the Commonwealth.  See Complaint [ECF No. 1] at ¶¶ 11, 16-88.  The construction project which is the subject of this action is in Tyrone, Pennsylvania, and the Contract entered by the parties relates to that Project.  See id. at ¶¶ 1, 15, Exhibit A, Contract.  As such, this Court has specific

personal jurisdiction over Defendants.  See, e.g., Kehm Oil Co. v. Texaco, Inc., 537 F.3d 290, 300 (3d Cir. 2008) ("Specific jurisdiction exists when the claim arises from or relates to conduct purposely directed at the forum state."); 42 Pa. C.S. § 5322.

**B.      FCC's Complaint States Valid Causes of Action Against Defendants.**

Next, the Court must determine whether accepting the Complaint's well-pleaded factual allegations as true, FCC has asserted a valid cause of action.  Jimenez, 2010 WL 1303449, at *4 (citations omitted).  As shown below, FCC's Complaint states four valid causes of action - fraudulent inducement, breach of contract, breach of warranty and specific performance.

**1.      Fraudulent Inducement.**

The elements of a fraudulent inducement/intentional misrepresentation claim are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." Gibbs v. Ernst, 647 A.2d 882, 889 (Pa. 1994). In addition to these elements, when the claim relates to a fraudulent inducement to contract, the plaintiff must show that the misrepresentation at issue was made with specific intent to induce another to enter into a contract when the person had no duty to enter into the contract.  See Goldstein v. Murland, No. Civ. A. 02-247, 2002 WL 1371747, at *1 (E.D. Pa. June 24, 2002).

The Complaint alleges that with the specific intent to induce FCC into contracting with Exeter, Ballard made numerous representations to FCC regarding Defendants' expertise, qualifications and experience in the design and construction of manufacturing facilities like the Project.  See Complaint [ECF No. 1] at ¶ 19.  Specifically:

- Ballard represented to FCC that Exeter had heavy construction equipment, such as bulldozers, that it would devote to the Project.

- Ballard represented to FCC that Exeter had employees that it would devote to the Project.

- Ballard provided FCC with a document representing that Exeter had served as the full service general contractor for several projects described in that document.

- Ballard represented that Exeter had completed several design and build projects at Dover Air Force Base on time and on budget.

- Ballard represented that Exeter had completed a $3.5 million project at Dover Air Force Base which involved Exeter completely remodeling supply building #639 to include a roofing system, wall systems, exterior doors, overhead doors and interior fit-out of two new offices.

- Defendants made these representations with the intent to induce FCC to enter into a contract with Defendants.

See id. at ¶¶ 19-24.  The Complaint also alleges these representations were false, FCC relied upon the false representations and FCC would not have entered into the Contract absent such representations.  See id. at ¶¶ 25-37.  The Complaint also alleges that as a proximate result of FCC's reliance upon Defendants' representations, FCC incurred significant damages as a result of Exeter's defective and incomplete work and delay on the Project.  See id. at ¶¶ 48-67; 82-87.

As such, FCC has sufficiently pled a cause of action for fraudulent inducement.

**2.  Breach of Contract.**

The elements of a breach of contract claim are: "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract and (3) resultant damages." J.F. Walker Co, Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002).

The Complaint alleges the parties entered a design-build contract for the engineering, procurement and construction of the Project and includes the Contract as an exhibit.  See Complaint [ECF No. 1] at ¶ 36; Exhibit A, Contract.  Also, the Complaint details Exeter's numerous contractual breaches and the resultant damages suffered by FCC.  See id. at ¶¶ 38-88.

As such, the Complaint states a valid cause of action for breach of contract.

### 3. Breach of Warranty.

The elements of a breach of express warranty claim are: "[1] the defendant breached or failed to meet its warranty promise, [2] that the breach was the proximate cause of the plaintiff's harm and [3] the amount of ensuing damages." Roberts v. NVR, Inc., No. 15-489, 2015 WL 3745178, at *3 (W.D. Pa. June 15, 2015) (citing Samuel-Bassett v. Kia Motors Am., Inc., 34 A.3d 1, 35 (Pa. 2011)).

The Complaint alleges Exeter issued warranties on its work, its work was defective and untimely, it breached the warranties, it failed to cure its breaches, it failed to correct the defects, and these breaches caused damages to FCC. See Complaint [ECF No. 1] at ¶¶ 38-87.

As such, FCC has alleged a breach of express warranty cause of action.

### 4. Specific Performance.

"[I]n a contract action seeking specific performance, a plaintiff must prove the existence of a contract, the actual terms of the agreement, and its willingness and readiness to perform." The Partnership CDC v. Apple Storage Co., Inc., No. 246 Aug. Term 2004, 050065, 2005 WL 1953041, at *4 (Pa. Com. Pl. July 29, 2005).

Here, the Complaint alleges Exeter failed to comply with Article 17.2.2 of the Contract which obligates Exeter to return to FCC "all information, Required Manuals, Contractor Deliverables, documents, patents, and licenses of Contractor related to the Work (whether completed or not) reasonably necessary to permit Owner to complete or cause the completion of the Work" in the event of Exeter's Default, despite FCC demanding such information. See Complaint [ECF No. 1] at ¶¶ 115-127.

As such, the Complaint states a valid cause of action for specific performance.

**C.      Default Judgment Against Defendants is Appropriate Because all *Chamberlain* Factors Weigh in Favor of Default Judgment Against Defendants.**

Finally, this Court must weigh the Chamberlain factors - (1) prejudice to plaintiff; (2) whether defendant has a meritorious defense; and (3) whether defendant's default is due to culpable conduct.  210 F.3d at 164; Kollmann, 2011 WL 6020168, at * 2.  As shown below, all three factors favor the entry of default judgment against Defendants.  Specifically:  (1) denying default judgment will prejudice FCC; (2) Defendants have no meritorious defense; and (3) Defendants' default is due to their culpable conduct.

**1.      Denying Default Judgment Will Prejudice FCC.**

In determining whether default judgment is appropriate, a court must consider whether denying default judgment will cause prejudice to the plaintiff.  See Broadcast Music, Inc. v. Longhorn Corral, Inc., No. 15-950, 2016 WL 164607, at * 1 (W.D. Pa. Jan. 14, 2016).  A plaintiff will be prejudiced by loss of available evidence or increased potential for fraud or collusion.  See Rios v. Marv Loves 1, No. 13-CV-1619, 2015 WL 5161314, at *5 (E.D. Pa. Sept. 2, 2015) (denying motion to set aside default and granting motion for default judgment).  "As time passes, memories fade and documents are lost or destroyed.  As the accessibility to the truth through discovery decreases, the opportunity for fraud and collusion increases … this type of conduct cannot be condoned by the court."  Titus v. Smith, 51 F.R.D. 224, 227 (E.D. Pa. 1970)

Ballard is involved in an extensive amount of Delaware state lawsuits regarding construction projects and land deals.  A search of Delaware dockets shows Ballard was a party to approximately 50 suits and had approximately 33 judgments (totaling well over $1,000,000) entered against him, the vast majority of them by default.  See Exhibit 2, Results of Delaware docket search.  The vast majority of these judgments remain outstanding.  See Exhibit 3, Results of Delaware judgment search.  In particular:

- 10 -

- In June 2010, a church filed a complaint against Ballard for breach, theft of trust funds, fraud and replevin, alleging Ballard provided defective construction work, misappropriated over $300,000 in funds, issued unauthorized change orders, and stole the church's materials (including serpentine stone).  See Exhibit 4, First Presbyterian Church of Smyrna, Del. v. Ballard Builders, et. al, Del. Super. Ct., Case No. K10C-06-016, Complaint filed 6/10/10.  In that case, Ballard initially hired an attorney to enter an appearance and file some preliminary pleadings just as he has done here.  However, Ballard's attorney withdrew shortly thereafter and was never replaced.  The church moved for and obtained a default judgment and an award of $643,663 in damages, which Ballard has never satisfied, necessitating the church incur the additional expenses associated with executing on the judgment.  See Exhibit 5, First Presbyterian Church of Smyrna, Del. v. Ballard Builders, et. al, Del. Super. Ct., Case No. K10C-06-016, Docket.

- In May 2010, a bank sued Ballard for defaulting on a note and obtained a default judgment against Ballard for approximately $40,000.  See Exhibit 6, Wilmington Trust Co. v. Ballard Builders, et. al, Del. Super. Ct., Case No. N10C-05-0123, Complaint filed 5/10/10; Exhibit 7, Wilmington Trust Co. v. Ballard Builders, et. al, Del. Super. Ct., Case No. N10C-05-0123, Docket.  After the judgment was entered, the bank attempted to take Ballard's deposition to aid in the execution of judgment and then had to file a motion to compel.  Ballard failed to appear for a deposition three different times.  See Exhibit 8, 4/13/15 letter to judge.  In May 2015, the Court issued an order holding Ballard in contempt and issued capias and set bail at $2,500.  See Exhibit 7, Wilmington Trust Co. v. Ballard Builders, et. al, Del. Super. Ct., Case No. N10C-05-0123, Docket.

Denying default judgment in this case will only provide Ballard additional opportunity to fraudulently conceal or transfer his assets (as he has repeatedly done in the past) so as to prevent FCC from pursuing its claims and obtaining compensation for the damages caused by Defendants.[2]  As such, the first Chamberlain factor weighs in favor of entering default judgment. See, e.g., Broadcast Music, 2016 WL 164607, at *1 (granting default judgment because "Plaintiffs will be prejudiced by their claimed lost revenues, and by their current inability to proceed with their action due to Defendants' failure to defend").

### 2. Defendants Do Not Have a Meritorious Defense to Any of FCC's Claims.

Next, a court must consider whether Defendants have set forth a meritorious defense. See

---

[2] FCC has also been prejudiced because it has been forced to attempt to complete the Project without Exeter returning the missing original drawings and permits as required by Article 17.2.2 of the Contract.

Broadcast Music, 2016 WL 164607, at * 1. The burden is on the defendant to present "***specific facts***" that would allow them to advance a "***complete defense*** to the action." U.S. v. $55,518.05 in U.S. Currency, 728 F.2d 192, 195 (3d Cir. 1984). (emphasis added). Denials, "conclusory statement[s]" or "perfunctory statement[s]" are insufficient without "credible factual allegations." American States Ins. Co. v. Bennett, 102 F.R.D. 102, 103 (W.D. Pa. 1984) (default judgment properly entered where "[d]efendants' allegations, even if fully established, do not constitute a complete defense to Plaintiff's action").

Defendants have not provided any "credible factual allegations" of any defense, let alone a "complete defense" to any of FCC's claims. Id.[3] As such, the second Chamberlain factor weighs in favor of entering default judgment. See, e.g., Broadcast Music, 2016 WL 164607, at * 1 (granting default judgment because where "Defendants have not answered the complaint and, accordingly, have not asserted any meritorious defense to its allegations or to the subsequent motion for default judgment"); Rios, 2015 WL 5161314, at *5 (denying motion to vacate default and granting default judgment where defendants never submitted a "proposed answer" and the "defenses" in defendants' unverified brief "amount[ed] to nothing more than general denials, attacks on Plaintiff's credibility, and conclusory arguments").

### 3. The Default Was the Result of Defendants' Culpable Conduct.

Finally, a court must consider whether the default was the result of the defendant's culpable conduct. See $55,518.05 in U.S. Currency, 728 F.2d at 195. "Culpable conduct" is "dilatory behavior that is willful or in bad faith." U.S. v. Mentzer, No. 09-cv-2065, 2012 WL 1020232, at *3 (E.D. Pa. Mar. 27, 2012). "Reckless disregard for repeated communications from

---

[3]  Defendants attempted to set forth some defenses to FCC's claims in their Brief in Support of Motion to Set Aside Default. [see ECF No. 12 at 6-7]. As FCC explained in detail in its Brief in Opposition, none of these unverified, general denials meet Defendants' burden to present specific and credible factual allegations which present a complete defense to any of the four counts contained in FCC's Complaint. [see ECF No. 16 at 7-12].

plaintiffs and the court … can satisfy the culpable conduct standard." <u>Rios</u>, 2015 WL 516134, at *6 (internal citations omitted); <u>see also</u> <u>World Entm't Inc. v. Brown</u>, 487 Fed. Appx. 758, 761 (3d Cir. 2012) (finding culpable conduct where defendant refused to accept service and respond to complaint in a timely manner); <u>Rios</u>, 2015 WL 5161314, at *7 (finding culpable conduct where defendants failed to answer, appear or plead). "[A] continued pattern of foot-dragging and delay" is culpable conduct. <u>Grzegorek</u>, 2009 WL 3241861, at *3.

Here, despite avoiding FCC's attempts to serve the Complaint via certified mail, Defendants were eventually properly served with the Complaint and summons via personal service. Defendants then ignored the Complaint. Neither Defendants nor their counsel ever requested an extension of time to respond to the Complaint, even though their counsel was present when they were served. Instead, Ballard continued with his long pattern of foot-dragging and delay, just as he has done repeatedly in Delaware for over a decade. He sat back and did nothing for months, forcing FCC to incur the expense of filing for default and default judgment.

Such disregard of the legal process is culpable conduct. If ignoring the legal process was excusable, it would "permit delay in every case." <u>Residential Reroofing Union Local 30-B v. Mezicco</u>, 55 F.R.D. 516, 518 (E.D. Pa. 1972). As such, the third <u>Chamberlain</u> factor weighs in favor of entering default judgment. <u>See</u>, <u>e.g.</u>, <u>Broadcast Music</u>, 2016 WL 164607, at * 1 (granting default judgment where "Defendants were all properly served, yet did not respond to the complaint")

## **CONCLUSION**

For all the above reasons, FCC respectfully requests that, in accordance with Federal Rule of Civil Procedure 55(b), the Court enter a default judgment against Defendants Exeter and Ballard on Plaintiff's Complaint and schedule a non-jury hearing to determine the damages due

in this case, including punitive damages and attorneys fees.

Dated:  February 11, 2016     /s/ William D. Wickard
Jason L. Richey, Esquire
Pa. I.D. # 78943
William Wickard, Esquire
Pa. I.D. # 87741

K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Tel.:  (412) 355-6260

*Counsel for Plaintiff*
*Federal Carbide Company*

**CERTIFICATE OF SERVICE**

     I hereby certify that on February 11, 2015, a copy of foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the following individuals and all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

          Matthew Jameson, III, Esq.
          Robert M. Palumbi, Esq.
          Babst, Calland, Clements and Zomnir, P.C.
          Two Gateway Center, 7th Floor
          603 Stanwix Street
          Pittsburgh, PA  15222


          /s/ William D. Wickard