**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| FEDERAL CARBIDE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 3:15-cv-248 |
| EXETER CONSTRUCTION, LLC., and | ) | |
| DENNIS B. BALLARD, | ) | |
| | ) | |
| Defendants. | ) | |

**BRIEF IN SUPPORT OF FEDERAL CARBIDE**
**COMPANY'S MOTION TO DISMISS DEFENDANT**
**EXETER CONSTRUCTION, LLC'S COUNTERCLAIM**

Federal Carbide Company ("FCC") contracted with Exeter Construction, LLC ("Exeter") to serve as general contractor to manage all elements of the design, procurement and construction of a new manufacturing facility, warehouse space and office space for FCC's operations in Tyrone, Pennsylvania (the "Project"). FCC contracted with Exeter based on numerous representations made by Exeter's president, Dennis Ballard ("Ballard"), regarding his and Exeter's experience, qualifications and ability to design and construct the Project.

However, Ballard and Exeter (which is essentially only Ballard and has no other employees) were not qualified or experienced; neither had ever designed and constructed a facility such as the Project. In fact, unbeknownst to FCC at that time, Ballard had just formed Exeter in April 2014. Not surprisingly, soon after beginning the Project, Exeter began causing significant damage to FCC and significant delay to the Project by being unprepared, not complying with the contract, improperly abandoning the Project from time to time, failing to pay subcontractors, failing to obtain permits and performing defective work. As a result, FCC was left with no choice but to terminate Exeter, pay Exeter's unpaid subcontractors, finish the Project

itself and commence this lawsuit to recover the substantial sums it incurred to complete the Project.

Exeter has now filed a Counterclaim containing three counts:  Count 1 - Breach of Contract, Count 2 - Unjust Enrichment and Count 3- violation of Pennsylvania's Contractor and Subcontractor Payment Act, 73 P.S. §§ 501 *et seq.* ("PCSPA").  None of these state a claim upon which relief can be granted.  In particular, as explained below:

(1)     All of Exeter's claims are barred by releases signed by Exeter;

(2)     Exeter's breach of contract claim (Count 1) and PCSPA claim (Count 3) must also be dismissed because: (i) Exeter failed to comply with the Contract's requirements for amending and modifying the Contract; and (ii) no payment is due Exeter because Exeter failed to comply with the Contract's conditions precedent for payment; and

(3)     Exeter's unjust enrichment claim (Count 2) must also be dismissed because the parties' relationship is governed by an express contract.

As such, FCC's Motion should be granted and Exeter's Counterclaim dismissed in its entirety

## **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Dennis Ballard formed Exeter on April 3, 2014.  See Counterclaim [ECF No. 20] at ¶ 10. FCC and Exeter entered into a "Design-Build Agreement for Engineering, Procurement and Construction Services" with Exeter on or around September 11, 2014 (the "Contract").  See id. at ¶ 17; and at Exhibit A, Contract.  In the Contract, Exeter agreed to provide "all engineering and design, procurement, construction, erection, installation, construction management, training assistance, the provision of all materials, Equipment, machinery, tools, transportation, administration and other services" for the Project on a fixed cost basis.  See id. at Exhibit A, Contract at § 1.71; § 4.2.

FCC and Exeter agreed that the Contract could not be orally amended and it could only be modified by a signed, written amendment or change order.  See id. at Exhibit A, Contract at §

30.5.   As such, any non-Contract work performed by Exeter without a signed change order would be at Exeter's "sole risk and expense" and Exeter would not be entitled to any payment for such work.  See id. at Exhibit A, Contract at §14.6.3.

The Contract required Exeter to submit the "Partial Release of Claims and Waiver of Mechanics' and Suppliers' Liens" (the "Release of Claims") that was attached to the Contract as Exhibit F-1 along with its invoices as a condition to receiving payment.  See id. at Exhibit A, Contract at § 7.2 & Exhibit F-1  In the Release of Claims, Exeter "unconditionally" released any "claims" whether "accrued or unaccrued" that related to work furnished by Exeter, the Contract or the Project.  See id. at Exhibit A, Contract at Exhibit F-1.

Exeter guaranteed that the Project would reach Substantial Completion by no later than two hundred (200) Calendar Days after FCC issued a Notice to Proceed.  See id. at ¶ 20; Exhibit A, Contract at § 1.68.   On September 11, 2014, FCC issued a Notice to Proceed to Exeter requiring Substantial Completion by March 30, 2015 and paid Exeter $50,000 as a deposit.  See id. at ¶ 20.  Over the next ten months, Exeter issued Payment Requests Nos. 1-7 to FCC.  See id. at ¶¶ 20, 49-52, 55-56.  FCC timely paid each of these Payment Requests.  See id.

Exeter did not achieve Substantial Completion of the Project by March 30, 2015.  See id. at ¶ 58.  By July 2015, Exeter was not near Substantial Completion and it still would not achieve Substantial Completion for at least seven months.  See id.  Exeter and FCC never agreed to any written amendment or any signed change order that extended the time for Exeter to achieve Substantial Completion or directed Exeter to perform non-Contract work.  See, e.g., id. at Exhibit D.

On July 28, 2015, FCC terminated the Contract via a letter which set forth examples of Exeter's defaults, including failure to timely achieve substantial completion.  See id. at ¶¶ 63, 65.

At some point after being terminated, Exeter submitted Payment Request No. 8 to FCC, which is dated August 1, 2015 for $635,044.96.  See id. at ¶ 71; Exhibit B.

## ARGUMENT

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to grant a motion to dismiss where the facts alleged in the complaint or counterclaim, even if true, fail to support a claim for relief.  See Fed. R. Civ. P. 12(b)(6).   "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations omitted).  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662 (2009) (citation omitted).  When determining whether a claim is plausible, a district court may also consider affirmative defenses raised by the moving party. United States v. American Society for Eng'g Educ., No. 12-1139, 2014 WL 1765337, at *4 (E.D. Pa. May 2, 2014).   The law of this Circuit, (the so-called "Third Circuit Rule") allows an affirmative defense to be raised by a Rule 12(b)(6) Motion.  See id. (citing Robinson v. Johnson, 313 F.3d 128, 135 (3d Cir. 2013)).

In deciding a motion to dismiss, the court should consider the complaint, exhibits attached to the complaint, matters of public record, and "undisputedly authentic" documents when the plaintiff's claims are based on the documents and they are attached to the motion to dismiss.  Vacation Charters, Ltd. v. Textron Fin. Corp., No. 3:14-CV-2083, 2016 WL 354094, at *6 (M.D. Pa. Jan. 28, 2016).  For purposes of the motion, all allegations of the complaint are treated as if true.  See Square D Co. v. Scott Elec. Co., No. 06-00459, 2008 WL 2096890, at *1 (W.D. Pa. May 16, 2008).  However, to the extent any of the allegations of the complaint

constitute legal conclusions or are contradicted by the documents attached to the complaint, the court need not accept such allegations as true.  See Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).

As discussed below, FCC's Motion to Dismiss should be granted because none of the Counts in Exeter's Counterclaim states a claim upon which relief may be granted.

A.      **All of Exeter's Claims Are Barred by Releases Signed by Exeter.**

As an initial matter, all of Exeter's claims are barred by releases executed by Exeter. "Under Pennsylvania law, general releases are interpreted by the rules of contract construction." Bickings v. Bethlehem Lukens Plate, 82 F. Supp. 2d 402, 405 (E.D. Pa. 2000) (citations omitted).  "[T]he effect of a release is to be determined by the ordinary meaning of its language." Taylor v. Solberg, 778 A.2d 664, 667 (Pa. 2001).  As such, "assuming the language is clear and unambiguous, the court looks no further than the language in interpreting the release, even if the language is broad or general, and no matter how 'improvident' the agreement may later prove to be for one of the parties."  G.R. Sponaugle & Sons, Inc. v. Hunt Const. Group, Inc., 366 F. Supp. 2d 236, 242 (M.D. Pa. 2004) (citations omitted).  "[A] party cannot evade the clear language of a release by contending that the party did not subjectively intend to release the claim at issue."  Id. at 242-43.   Based on these principles, Pennsylvania courts routinely enforce claim and lien waivers to bar claims arising prior to execution of the release.  See, e.g., id.; Bricklayers & Allied Craftworkers Local 1 of Pa/De v. ARB Constr., Inc., No. 13-3883, 2016 WL 1161528, at * 5 (E.D. Pa. Mar. 23, 2016) (citing cases).[1]

---

[1]      Exeter's Release of Claims was required to be submitted by the Contract, is attached to the Counterclaim, this Motion, and is integral to Exeter's claims.  As such, under the "Third Circuit Rule," this Court can properly consider Exeter's Release of Claims during the motion to dismiss phase.  See, e.g., Vacation Charters, Ltd., 2016 WL 354094, at *6 (granting Rule 12(b)(6) motion based on a release); Butcher v. General Motors Co., Nos. 2:14-cv-00353, 2:14-

The Contract required Exeter to sign and submit the Release of Claims that was attached to the Contract as Exhibit F-1 along with its invoices as a condition to receiving payment. <u>See</u> Counterclaim [ECF No. 20] at Exhibit A, Contract at § 7.2 and Exhibit F-1. As such, during the Project Exeter executed several Releases of Claims, the last of which had an Invoice Date of June 30, 2015, in which Exeter "unconditionally" released any "claims" whether "accrued or unaccrued" it had against FCC that related to work furnished by Exeter, the Contract or the Project:

> [Exeter] does hereby unconditionally and without reservation waive, release, remise and relinquish any and all actions demands, debts, counterclaims, set-offs, claims and any liability whatsoever, including without limitation claims for disputed work, extra work, impact costs, inefficiency or delay, whether in contract, tort (including negligence of all kinds) or otherwise, whether known or unknown, whether accrued or unaccrued, arising out of or related directly or indirectly, to the Furnished Work or the Contract or the Project as of the Invoice Date, which it had, has or may have against [FCC] and further, on behalf of itself and anyone acting or claiming through or under it, hereby waives and releases any mechanics', materialman's or similar liens or stop notices and all rights to file any such liens or notices in the future against the real property where the Project is located, and the improvements thereon and on the monies or other consideration due or to become due from [FCC] for the Furnished Work, and agrees to defend, indemnify and hold harmless [FCC] from and against any and all costs and expenses (including reasonable attorney fees and costs) resulting from any such claim or lien.

<u>See</u> Exhibit 1, Exeter's Releases of Claims.

Now, Exeter claims that it is due payment for materials and work as the result of FCC ordering it in mid-November 2014 to perform additional work outside the scope of the Contract in order to construct a new two story building. <u>See</u> Counterclaim at [ECF No. 20] ¶¶ 23, 24, 29, 38, 43, 44, 46, 75, 89, 90, 92, 97, 100, 108, 109, 111. Exeter also alleges that it was entitled to additional time to complete the Project as a result of the same alleged mid-November 2014

---

cv-01652, 2015 WL 867797, at *6 (W.D. Pa. Feb. 27, 2015) (same); <u>Cuchara v. Gai-Tronics Corp.</u>, Civ. A. No. 03-6573, 2004 WL 1438186, at *4-5 (E.D. Pa. Apr. 7, 2004) (same).

direction by FCC.  See id. at ¶¶ 37, 42, 58, 66, 75, 81.  As such, Exeter has asserted claims for breach of contract, unjust enrichment and violation of PCSPA.  See id. at ¶¶ 73-111.

Exeter has released these claims.  Exeter released all its "accrued or unaccrued" claims relating to the events that occurred prior to June 30, 2015.  See Exhibit 1, Exeter's Releases of Claims.  By Exeter's own admission, its claims accrued and relate to acts that occurred in mid-November 2014 - months prior to when Exeter signed the Releases of Claims - when Exeter alleges FCC began interfering with Exeter's work, altered the scope of work and ordered Exeter to perform additional work.  See Counterclaim [ECF No. 20] at ¶¶ 29, 38, 40, 43-46, 75, 89, 90, 92.  For this reason alone, the Court must dismiss Exeter's Counterclaim in its entirety.  See, e.g., Bricklayers & Allied Craftworkers Local 1 of Pa/De, 2016 WL 1161528, at * 5 (dismissing subcontractor's claims where contractor terminated subcontractor for failure to timely complete its work and subcontractor signed a release of claims relating to events occurring prior to signing); First Gen. Const. Corp., Inc. v. Kasco Const. Co., Inc., No. 10-2655, 2011 WL 2038542, at *5 (E.D. Pa. May 24, 2011) (subcontractor could not recover for any claims that accrued prior to the release by which subcontractor waived and released "any and all claims and liens"); Sauer Inc. v. Honeywell Bldg. Solutions SES Corp., 742 F. Supp. 2d 709, 720 (W. D. Pa. 2010) (subcontractor's claims barred where claims accrued prior to signing of release); G.R. Sponaugle & Sons, 366 F. Supp. 2d at 242 (dismissing subcontractor's claims for extra work performed prior to signing of release).

**B.     Exeter's Breach of Contract Claim (Count 1) and PCSPA Claim (Count 3) Must Be Dismissed Because Exeter Cannot Allege that FCC has Breached the Contract and/or Improperly Withheld Payment From Exeter.**

Even if Exeter had not released all its claims, this Court must still dismiss its breach of contract and PCSPA claims for failure to state a claim upon which relief can be granted.  In order

to prevail on its breach of contract claim, Exeter must plead and prove: "(1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract and (3) resulting damages." J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc., 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002). Further, in order to be entitled to certain extra-contractual remedies provided in the PCSPA, Exeter must plead and prove FCC did not remit payment to Exeter "strictly in accordance with terms of the construction contract." 73 P.S. §505(a).

Exeter has not and cannot allege that FCC has breached the Contract and/or improperly withheld payment. As shown below: (i) Exeter failed to comply with the Contract's requirements for amending and modifying the Contract; and (ii) no payment is due Exeter because Exeter failed to comply with the Contract's conditions precedent for payment. For either one of these reasons, this Court must dismiss Exeter's breach of contract claim (Count 1) and PCSPA claim (Count 2).

**1.    Exeter Failed to Comply with the Contract's Requirements With Respect to Amending and Modifying the Contract.**

Where a contract provides that it can only be modified by a written amendment, the parties cannot orally modify the contract without first explicitly waiving the written amendment requirement. See C.I.T. Corp. v. Jonnet, 214 A.2d 620, 622 (Pa. 1965). Simply alleging the parties orally amended the contract is insufficient where the contract requires all modifications be in writing. See id. If such "a loose and rambling averment were to be accepted as wiping out a solemn stipulation in a written contract, then such stipulations would last no longer than the vapor writings by airplanes in the sky." Id.

The Contract could not be orally modified and could only be modified by a signed, written amendment or change order:

> No Oral Modification.  No oral or written amendment or modification of this Agreement (including a Change In Work Form accepted under Article 14) by any officer, agent, or employee of Contractor or Owner, either before or after execution of this Agreement shall be of any force or effect unless such amendment or modification or Change In Work Form is in writing and signed by any President, any Vice President or the Chief Executive Officer of the Party (or the managing member of the Party on behalf of the Party) to be bound thereby.

Counterclaim [ECF No. 20] at Exhibit A, Contract at § 30.5.  The Contract also provided that any additional work performed by Exeter without a signed change order would be at Exeter's "sole risk and expense" and Exeter would not be entitled to any payment for such change:

> No Change in Work or Payment Therefor Without Executed Change in Work Form.  Unless Contractor received a Notice from Owner to proceed with the Change In Work as set forth in Section 14.2, in no event shall Contractor be entitled to undertake or be obligated to undertake any change to the Work until the Parties have executed the Change In Work Form and, in the absence of such Change In Work Form or Notice to Owner of a dispute with respect to such change to the Work, if Contractor undertakes any changes to the Work, Contractor shall make any such changes to the Work at Contractor's sole risk and expense and Contractor shall not be entitled to any payment hereunder for undertaking such change to the Work.

Id. at Exhibit A, Contract at §14.6.3.

Exeter admits that it did not achieve substantial completion within 200 days of the notice to proceed (i.e., by March 30, 2015) as required by the Contract.  See id. at ¶ 58.  Exeter also admits that by July 2015, substantial completion was at best still seven months away.  See id. Nonetheless, Exeter contends that the Contract was amended to extend the substantial completion date almost a year to February 8, 2016 and include certain additional work.  See id. at ¶¶ 36-37.  As such, Exeter claims FCC breached the Contract and violated the PCSPA by terminating Exeter in July 2015 and not paying Exeter amounts on Payment Request No. 8 (including amounts for the additional work), which it submitted after termination.  See id. at ¶¶ 66, 70, 71, 72, 82, 85.

Exeter attaches four change orders to its Counterclaim as Exhibit D which it contends amended the Contract to extend the substantial completion date and require Exeter perform additional work but ***none of them are signed by either Exeter or FCC***.  Nor does Exeter allege the parties signed a written amendment or change order as required by Sections 14.6.3 and 30.5. As such, none of these unsigned change orders are "of any force or effect" and any work performed by Exeter pursuant to these unsigned changes orders was at Exeter's "sole risk and expense and [Exeter] shall not be entitled to any payment" for such work.   Counterclaim [ECF No. 20] at Exhibit A, Contract at § 30.5 and § 14.6.3.  In sum, because Exeter and FCC never agreed to any written amendment or any signed change order that extended the time for Exeter to achieve substantial completion or directed Exeter to perform non-Contract Work, FCC's termination of Exeter for failure to achieve substantial completion and not paying Payment Request No. 8 were both proper.

As such, for this reason alone, this Court must dismiss Exeter's breach of contract claim (Count 1) and PCSPA claim (Count 3).  See, e.g., G&T Conveyor Co., Inc. v. Allegheny County Airport Auth., No. 11cv0562, 2011 WL 2634161, at * 4 (W.D. Pa. July 5, 2011) (dismissing contractor's PCSPA claim where contract required a written change order to be signed by owner and contractor never obtained a signed change order); Environmental Utilities Corp. v. Lancaster Area Sewer Auth., 453 F. Supp. 1260, 1264 (E.D. Pa. 1978) (dismissing contractor's extra work claim where contractor never obtained a signed change order as required by contract); Lichter v. Mellon-Stuart Co., 193 F. Supp. 216, 223 (W.D. Pa. 1961) (denying extra work claim where contractor never obtained a written work order as required by contract).

2. **No Payment is Due Exeter Because Exeter Failed to Comply with the Contract's Conditions Precedent for Payment.**

A condition precedent is a "condition which must occur before a duty to perform under a contract arises." Acme Markets, Inc. v. Fed. Armored Exp., Inc., 648 A.2d 1218, 1220 (Pa. Super. Ct. 1994). "While the parties to a contract need not utilize any particular words to create a condition precedent, an act or event designated in a contract will not be construed as constituting one unless that clearly appears to have been the parties' intention." Id.

Exeter's submission of partial lien releases (from both Exeter and Exeter's subcontractors) was a condition precedent to FCC's obligation to make any progress payment:

> 7.2 Certification by Contractor. Each Contractor's Invoice…shall include Contractor's and all Subcontractors' Partial Release and Waiver of Liens and Claims.
>
> It is understood and agreed by Contractor that any Contractor's Invoice that is inaccurate or incomplete or that lacks the detail, specificity or supporting documentation required by this Article shall not, to the extent of such deficiency, constitute a valid request for payment. Each Progress Payment shall be due and payable only to the extent it is supported by the performance of the corresponding individual portion of the Work, it being acknowledged and understood that no Progress Payment shall be made for any improperly completed individual portion of Work or for Work that remains subject to Owner's review and inspection rights in accordance with Section 11.5.
>
> 7.3 Subcontractor Statements. Accompanying each Contractor's Invoice, Contractor shall submit a Partial Release and Waiver of Liens and Claims from each Subcontractor whose Work is covered under such Contractor's Invoice.

Counterclaim [ECF No. 20] at Exhibit A, Contract at § 7.2; § 7.3.

Further, Exeter's submission of final lien releases (from both Exeter and Exeter's subcontractors) was a condition precedent to FCC's obligation to make final payment (and release the retainage):

> 7.6 Final Payment. … Owner shall have no obligation to make Final Payment until Contractor shall have delivered the following items to Owner:

- 11 -

   7.6.1 With respect to each Subcontractor, the Final Release and Waiver of Liens and Claims; and

   7.6.2 With respect to Contractor

    (i) A certification to the effect that:

     (x) Contractor has been paid all amounts owing or that may become owing to Contractor with respect to the Project and the performance of the Work except for amounts requested in the Final Contractor's Invoice, and

     (y) Contractor has been paid all amounts that Contractor will be required to pay in connection with the performance of the Work, including all undisputed amounts to be paid to any Subcontractor with respect to the Project and the performance of the Work, except for amounts that in the aggregate shall be less than the Final Payment; and

    (ii) the Final Release and Waiver of Liens and Claims.

Id. at § 7.6.1; § 7.6.2.

  Exeter alleges FCC has not paid it amounts requested in Payment Request No. 8.  See Counterclaim at [ECF No. 20] at ¶ 71; Exhibit B.[2]  However, Exeter does not attach to its Counterclaim or allege that it supplied FCC with either a partial or final release of liens from itself or its subcontractors for the work covered under Application for Payment No. 8.  The plain language of the Contract is that FCC's payment obligation does not arise until Exeter provides it with releases of liens from itself and its subcontractors. As such, Application for Payment No. 8 is not "a valid request for payment," and FCC has "no obligation to make Final Payment" including releasing the retainage to Exeter.  Id. at § 7.2, § 7.6.1; § 7.6.2.

  Because Exeter's own allegations show that Exeter never satisfied multiple condition precedents to FCC's payment obligations, this Court must dismiss Exeter's breach of contract

---

[2] Exeter admits that FCC has timely paid it for each of the Payment Requests Nos. 1-7 Exeter issued to FCC.  See Counterclaim at [ECF No. 20] ¶¶ 20, 49-52, 55-56.

claim (Count 1) and PCSPA claim (Count 3).  See, e.g., Bricklayers & Allied Craftworkers Local 1 of Pa/De v. ARB Constr., Inc., 2016 WL 1161528, at * 7 (dismissing subcontractor's breach of contract claim for non-payment where subcontractor never submitted release of liens as required by contract).[3]

## C. Exeter's Unjust Enrichment Claim (Count 2) Must Be Dismissed Because the Parties' Relationship is Governed by an Express Contract.

Finally, even if Exeter had not released its unjust enrichment claim, this Court must still dismiss this claim because the parties' relationship is governed by an express contract.  Under Pennsylvania law, a claim for unjust enrichment is not available when "the relationship between parties is founded on a written agreement or express contract."  Curley v. Allstate Ins., Co., 289 F. Supp.2d 614, 619 (E.D. Pa. 2003) (quoting Schott v. Westinghouse Elec. Corp., 259 A.2d 443, 448 (Pa. 1969)).[4]  Indeed, "the essence of the doctrine of unjust enrichment is that there is no direct relationship between the parties."  Promark Realty Group, Inc. v. B & W Assoc., No. 02-cv-1089, 2002 WL 862566, at *4 (E.D. Pa. May 1, 2002).

---

[3]     Because FCC terminated Exeter for default, the Contract provides that Exeter has no right to payment until the Project is finished and FCC determines the liability of Exeter for its default.  See Counterclaim [ECF No. 20] at § 17.3.1.  Nowhere does Exeter allege that FCC has completed the Project and/or determined the full liability of Exeter.  This is yet another reason why no payment can be due to Exeter and this Court must dismiss Exeter's breach of contract claim (Count 1) and PCSPA claim (Count 3).

[4]     See also Hershey Foods Corp. v. Ralph Chapek, Inc., 828 F.2d 989, 999 (3d Cir. 1987) ("Where an express contract governs the relationship of the parties, a party's recovery is limited to the measure provided in the express contract; and where the contract 'fixes the value of the services involved,' there can be no recovery under a quantum meruit theory."); Murphy v. Haws & Burke, 344 A.2d 543, 546 (Pa. Super. Ct. 1975) (holding that where a contract existed fixing the value of the services, there could be no recovery in quantum meruit); Babiarz v. Bell Atlantic-Pennsylvania, Inc., No. 1863, CONTROL 071389, 2001 WL 1807378, *5 (Pa.Com.Pl. Nov. 20, 2001) ("Plaintiff cannot maintain his claim for… unjust enrichment in the face of a fully executed agreement").

A party cannot plead a breach of contract claim and an unjust enrichment claim "in the alternative" absent an allegation that the contract was not in effect.  See, e.g., Corson v. Independence Blue Cross, No. 2148 Control 031598, 2001 WL 1807399, at *5 (Pa. Com. Pl. June 15, 2001) (dismissing claim where there was no allegation that contract was not in effect). As such, "[d]ismissal of an unjust enrichment claim is appropriate upon a motion to dismiss when the relationship between the parties is founded on a written instrument."  Harold ex rel. Harold v. McGann, 406 F. Supp. 2d 562, 578-79 (E.D. Pa. 2005).

Here, the Contract sets forth the rights and liabilities of the parties and "constitute[s] the entire agreement between the Parties with respect to the Project[.]"  Counterclaim [ECF No. 20] at Exhibit A, Contract at § 30.11.  Exeter alleges that it performed services for which it seeks payment in accordance with and pursuant to the Contract.  Id. at ¶¶ 71-72.  Exeter never alleges that it performed work after FCC terminated the Contract on July 28, 2015 or that the Contract was not in effect when Exeter allegedly performed its work on the Project.  See id. at ¶ 63. Exeter's own allegations make clear that the relationship between the parties arises from and is governed solely by an express, integrated, written contract.

As such, Exeter cannot recover on an unjust enrichment claim or plead such a claim "in the alternative" and Exeter's unjust enrichment claim (Count 2) should be dismissed.  See, e.g., Sheinman Provisions, Inc., v. Nat'l Deli, LLC, No. 08-0453, 2008 WL 2758029, at *4 (E.D.Pa. July 15, 2008) (granting motion to dismiss unjust enrichment claim because a fully integrated contract governed the entire relationship of the parties); Promark Realty Group, 2002 WL 862566, at *4 (granting motion to dismiss unjust enrichment claim due to the presence of a

written contract and rejecting plaintiff's argument that it is permitted to plead unjust enrichment as an alternative to its contract-based claim).[5]

## **CONCLUSION**

For all the above reasons, FCC respectfully requests that, in accordance with Federal Rule of Civil Procedure 12(b)(6), the Court enter an order dismissing Exeter's Counterclaim with prejudice for failing to state a claim upon which relief can be granted.

Dated:  April 6, 2016

/s/ William D. Wickard
Jason L. Richey, Esquire
Pa. I.D. # 78943
William Wickard, Esquire
Pa. I.D. # 87741

K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Tel.:  (412) 355-6260

*Counsel for Plaintiff*
*Federal Carbide Company*

---

[5]    See also Constar, Inc. v. Nat'l Dist. Ctrs., Inc., 101 F. Supp. 2d 319, 324 (E.D. Pa. 2000) (granting motion to dismiss unjust enrichment claim as such a claim is "defeated by the existence of the contract between the parties"); Armstrong World Indus., Inc. v. Robert Levin Carpet Co., No. 98-5884, 1999 WL 387329, at *25-26 (E.D. Pa. May 19, 1999) (granting motion to dismiss unjust enrichment claim based on the existence of a valid contract governing the parties' relationship); Williams v. Katawczik, 53 Pa. D.&C. 4th 558, 562 (Pa. Com. Pl. 2001) (J. Wettick) (dismissing unjust enrichment counts based on "case law holding that the doctrine of unjust enrichment is not applicable where the relationship is governed by a contract").

## CERTIFICATE OF SERVICE

I hereby certify that on April 6, 2016, a copy of foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the following individuals and all parties indicated on the electronic filing receipt.  All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

Matthew Jameson, III, Esq.
Robert M. Palumbi, Esq.
Babst, Calland, Clements and Zomnir, P.C.
Two Gateway Center, 7th Floor
603 Stanwix Street
Pittsburgh, PA  15222


/s/ William D. Wickard