IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL CARBIDE COMPANY, | ) |
|       Plaintiff, | ) Civil Action No. 3:15-cv-248 |
| v. | ) District Judge Kim R. Gibson |
| EXETER CONSTRUCTION, LLC., and DENNIS B. BALLARD, | ) |
|       Defendants. | ) |

**BRIEF IN SUPPORT OF MOTION FOR SANCTIONS
AGAINST DEFENDANTS EXETER CONSTRUCTION, LLC AND
<u>DENNIS B. BALLARD FOR FAILURE TO COMPLY WITH ORDER OF COURT</u>**

Dennis B. Ballard ("Ballard") ducked Federal Carbide Company's ("FCC's") initial attempts to serve him with the complaint in this case. Once FCC was finally able to complete service, Ballard ignored his legal obligations, failed to make an appearance or file a response or participate in the case. Instead, he sat back and did nothing for months, forcing FCC to incur the expense of filing for default and preparing a default judgment motion. This Court entered default against Ballard and Exeter Construction, LLC ("Exeter"; collectively "Defendants"). Ballard then hired counsel to convince this Court to lift the default and give Defendants additional time to respond to the Complaint. Ballard apparently paid his counsel to file a counterclaim in this case, attend the initial status conference with this Court and participate in the Court-ordered mediation. After it became clear that FCC would not agree to pay Ballard any money, Ballard stopped paying his counsel, failed to comply with his discovery obligations and blatantly ignored this Court's order compelling him to provide discovery with FCC.

As such, this Court should impose sanctions against Defendants pursuant to Rules 37(b)(2)(A) and 41(b) of the Federal Rules of Civil Procedure and enter an Order that: (i) enters

a default judgment against Defendants on FCC's Complaint; (ii) dismisses Defendant Exeter's Counterclaim with prejudice; (iii) awards attorney's fees to FCC for the costs it incurred in connection with this Motion pursuant to Rule 37(b)(2)(C); and (iv) schedules a non-jury hearing to determine the damages due FCC, including punitive damages and attorneys fees. Alternatively, this Court should modify its Initial Scheduling Order and extend the discovery period (and all remaining deadlines) by an additional ninety days to allow FCC additional time to conduct fact discovery.

## BACKGROUND

**A.     Defendants Induce FCC to Enter a Construction Contract for the Project.**

Ballard is a resident of Delaware. See Complaint [ECF No. 1] at ¶ 1. Over the last decade or so, Ballard and several of Ballard's entities were involved in an extensive amount of Delaware state lawsuits regarding construction projects and land deals. A search of Delaware dockets shows Ballard was a party to approximately 51 suits and had approximately 34 judgments (totaling well over $1,000,000) entered against him, the vast majority of them by default. See Exhibit 1, Results of Delaware docket search. The vast majority of these judgments remain outstanding (i.e., only a few relatively small judgments have been marked as satisfied). See Exhibit 2, Results of Delaware judgment search.

His reputation thoroughly sullied in Delaware, in 2014, Ballard turned his sights upon finding new victims in Pennsylvania, set up Exeter as his new shell company and made numerous misrepresentations to FCC regarding Ballard and Exeter's expertise, qualifications and experience in the design and construction of manufacturing facilities. See Complaint [ECF No. 1] at ¶¶ 16-35. As a result of these misrepresentations, FCC entered into a construction contract (the "Contract") with Exeter for the design, procurement and construction of a new

manufacturing facility, warehouse space and office space for FCC in Tyrone, Pennsylvania (the "Project").  See id. at ¶¶ 36-45.  Article 29.1 of the Contract entitles the substantially prevailing party in any legal action to all its attorneys' fees, cost and expenses.  See id. at ¶¶ 108, 114 & [ECF No. 1-2].

Ballard and Exeter showed up unprepared for the Project, failed to comply with the Contract, abandoned the Project, failed to pay subcontractors and performed defective work. See id. at ¶¶ 46-88.  FCC was left with no choice but to terminate the Contract and file the Complaint in this lawsuit.  [ECF No. 1].

**B.      The Court Enters Default Against the Defendants.**

FCC attempted to serve Defendants with the Complaint via certified mail.  Ballard avoided these attempts by refusing to accept the mail.

On October 6, 2015, FCC personally served Ballard and Exeter with the Complaint. [ECF No. 6 & ECF No. 7].  As such, Defendants were required to file a responsive pleading to the Complaint within 21 days pursuant to Rule 12(a)(1)(A)(i) of the Federal Rules of Civil Procedure, i.e., October 27, 2015.

Neither Defendant ever filed an answer or other responsive pleading in accordance with the Federal Rules of Civil Procedure.  Moreover, neither Defendants nor their counsel ever requested an extension of time to respond to the Complaint.  As such, on November 12, 2015, FCC requested the Clerk enter default against both Defendants.  [ECF No. 8].  On November 13, 2015, the Clerk entered default against both Defendants for failing to appear, plead or otherwise defend.  [ECF No. 9].

On November 25, 2015, Defendants' counsel finally entered an appearance and filed a Motion to Set Aside Default [ECF No. 10 & ECF No. 11].  FCC opposed Defendants' Motion to

Set Aside Default [ECF No. 16] and also filed a Motion for Default Judgment [ECF No. 17].

On February 22, 2016, this Court entered an Order setting aside the default, denying FCC's Motion for Default Judgment and providing Defendants with twenty days to file a responsive pleading. [ECF No. 19]. Exeter filed a Counterclaim. [ECF No. 20]. FCC filed a Motion to Dismiss the Counterclaim, which is fully briefed and remains pending. [ECF No. 23].

C.  **Defendants Fail to Comply with the Court's Orders.**

On April 19, 2016, the Court entered an Initial Scheduling Order that states that "[t]he parties shall complete all fact discovery by November 1, 2016." [ECF No. 25] On June 24, 2016, the parties participated in a mediation with Arthur H. Stroyd, Jr., Esq. The parties failed to reach an amicable resolution during this mediation.

Shortly thereafter, on July 14, 2016, FCC served Defendants with FCC's First Set of Interrogatories (attached hereto as Exhibit 3) and FCC's First Request for Production of Documents and Things (attached hereto as Exhibit 4; collectively, the "Discovery Requests"). In accordance with Rules 33 and 34 of the Federal Rules of Civil Procedure, Defendants' responses to these Discovery Requests were due on or before August 15, 2016.

Defendants failed to respond to the Discovery Requests by August 15, 2016. As such, on August 17, 2016, counsel for FCC sent counsel for Defendants a letter requesting Defendants provide their responses to FCC's Discovery Requests by August 19, 2016, so there would be no need for Court involvement. See Exhibit 5, 9/17/16 letter from W. Wickard to R. Palumbi.

Defendants did not provide responses to FCC's Discovery Requests by August 19, 2016. Instead, on August 23, 2016, counsel for Defendants requested an extension until September 16, 2016 to respond to FCC's Discovery Requests. See Exhibit 6, 8/23/16 email from R. Palumbi to J. Richey. FCC's counsel agreed to grant Defendants the extension, but also made clear that that

it could not give any more extensions due to the approaching discovery deadline in this case (i.e., November 1, 2016) and the necessity for FCC to receive Defendants' responses to FCC's Discovery Requests before FCC could take depositions in the case.  See id.

Defendants did not provide responses to FCC's Discovery Requests by September 16, 2016.  As such, counsel for FCC met and conferred with counsel for Defendants via telephone on September 21, 2016.  In that telephone conversation, Defendants counsel represented he probably could provide responses to FCC's Discovery Requests by the end of that week, i.e., September 23, 2016.

Defendants did not provide responses to FCC's Discovery Requests by September 23, 2016.  As such, FCC was forced to file a Motion to Compel.  [ECF No. 34].  Defendants never filed a response to FCC's Motion to Compel.

On October 6, 2016, this Court entered an Order granting the Motion to Compel and ordering Defendants to "fully and completely" respond to FCC's Discovery Requests within 10 days (by October 17, 2016).  [ECF No. 35].  The Order also required Defendants to pay FCC's attorneys fees for preparing the Motion.

Defendants did not provide any responses to FCC's Discovery Requests by October 17, 2016, let alone "fully and completely" respond to FCC's Discovery Requests.

Instead, Defendants' counsel filed a Motion to Withdrawal [ECF No. 36] making clear Defendants have not paid their legal bills.

## ARGUMENT

"Both the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district court to dismiss a case as a sanction for failure to follow procedural rules or court's order."  Ogilvie v. Tore, Civ. No. 3:15-214, 2016 WL 3659943, at * 3 (W.D. Pa.

July 1, 2016) (District Judge Kim Gibson) (quoting Knoll v. City of Allentown, 707 F.3d 406, 409 (3d Cir. 2013)). For instance, Rule 37(b)(2)(A) provides that a court may dismiss an action and/or render a default against a party where the party "fails to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A)(v) & (vi). Likewise, Rule 41(b) provides that a court may dismiss an action if a party fails to "comply with [the Federal Rules of Civil Procedure] or a court order." Fed. R. Civ. P. 41(b).

The Third Circuit has set forth the following six factors district courts should consider and balance in deciding whether dismissal and/or default is appropriate:

(1) the extent of the *party's* personal *responsibility*;

(2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery;

(3) a *history* of dilatoriness;

(4) whether the conduct of the party or the attorney was *willful* or in *bad faith*;

(5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and

(6) the *meritoriousness* of the claim or defense.

Poulis v. State Farm Fire & Cas. Co., 747 F.2d 863, 868 (3d Cir. 1984)(emphasis in original). "[N]ot all of the Poulis factors need to be satisfied in order to dismiss a complaint." Dively v. Seven Springs Farm, Inc., No. Civ.A. 3:10-126, 2012 WL 1865414, at *3 (W.D. Pa. Apr. 23, 2012) (District Judge Kim Gibson) (quoting Mindek v. Rigatti, 964 F.2d 1369, 1373 (3d Cir. 1992)). See, e.g., Grossberg v. Adamski, No. CIV.A. No. 88-1937, 1989 WL 56414, at *3 (W.D. Pa. Apr. 27, 1989) (entering default judgment on plaintiffs' complaint and dismissing defendants' counterclaim as sanctions for defendants' refusal to comply with discovery requests or court's order compelling discovery responses).

As shown below, each one of the Poulis factors weighs in favor of entering a default judgment against Defendants on FCC's Complaint and dismissing Exeter's Counterclaim with prejudice.

**A.      Extent of Defendants' Personally Responsibility.**

The first factor requires the Court to access the extent to which Ballard, as opposed to counsel for Ballard, is responsible for the failure to comply with the Discovery Requests and this Court's Orders.  See Poulis, 747 F.2d at 868; Ogilvie, 2016 WL 3659943, at * 3.

As an initial matter, Ballard himself - not his counsel - ducked FCC's attempts to complete service in this case.  Then Ballard himself - not his counsel - ignored his legal obligations, sat back and did nothing for months, forcing FCC to incur the expense of filing for default and preparing a default judgment motion.  Only then did Ballard start paying his counsel to participate in this litigation.  Then, Ballard paid his counsel only until it became clear at the mediation that FCC would not agree to pay Ballard any money.  He then stopped paying his counsel.

As a result of Ballard's failure to pay his counsel, Defendants failed to respond to the Discovery Requests, forcing FCC to incur the time and expense of filing a motion to compel which Ballard never bothered to respond to.  Then, once this Court ordered Ballard to respond to the Discovery Requests, Ballard ignored this Court's Order and sat back and did nothing, forcing FCC to incur the expense of filing this Motion.

All information and documents to be disclosed or produced are all within Ballard's custody, possession, or control.  Nonetheless, even though over 100 days have elapsed since FCC served the Discovery Requests, Ballard has refused to respond to the Discovery Requests at all. Ballard's actions - not his counsel's - have prevented FCC from serving additional written

discovery requests, conducting depositions and completing fact discovery by November 1, 2016 as required by this Court's Initial Scheduling Order.

Here, Ballard - not his counsel - is personally responsible for failing to comply with the Discovery Requests and this Court's Orders. As such, this factor weighs in favor of the sanctions of default and dismissal. See, e.g., Grossberg, 1989 WL 56414, at *3 (entering default and dismissing counterclaim because party was personally responsible for failure to comply with discovery requests or court orders where counsel had withdrawn).

**B.    Prejudice to FCC.**

The second factor asks whether FCC has been prejudiced by Ballard's conduct. See Poulis, 747 F.2d at 868. "This factor does not require a showing of 'irremediable harm'; rather, 'the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy is sufficiently prejudicial' for this factor to weigh in favor or dismissal." Ogilvie, 2016 WL 3659943, at * 4 (quoting Ware v. Rodale Press, Inc., 322 f.3d 218, 222 (3d Cir. 2003)). Prejudice that will support dismissal "can consist of the extra costs of repeated delays in filing motions necessitated by the improper behavior on the part of [the other party.]" Dively, 2012 WL 1865414, at *4 (quotations omitted).

As an initial matter, FCC has been prejudiced by Ballard's conduct in the form of the expenses it incurred to file for default, prepare a default judgment motion and oppose Ballard's motion to re-open default.

Further, FCC has been prejudiced in the form of the expenses it incurred in connection with Defendants' failure to respond to the Discovery Requests and this Court's Order. Defendants failed to respond or object to FCC's Discovery Requests served on July 14, 2016. As a result, FCC incurred the expense of sending multiple communications to Defendants

requesting their cooperation, and ultimately a motion to compel with this Court. Defendants never responded to the motion to compel, which this Court granted. Defendants have still not responded to the Discovery Requests even though over 100 days have passed since they were served.

Finally, FCC has also been prejudiced because it has been deprived of information pertaining to FCC's claims against Defendants and Exeter's Counterclaim essential for FCC to prepare for trial. FCC intended to conduct depositions after receiving Defendants' response to the Discovery Requests. FCC also intended to serve additional written discovery after receiving Defendants' response to the Discovery Requests. However, since this Court's Order sets November 1, 2016 as the end of fact discovery, FCC will be prevented from deposing witnesses or conducting additional written discovery.

In sum, Defendants' conduct has substantially delayed the litigation, caused FCC to incur unnecessary additional costs, prevented FCC from obtaining information through discovery and prevented FCC from effectively preparing for trial. As such, this factor weighs in favor of the sanctions of default and dismissal. See, e.g., Ogilvie, 2016 WL 3659943, at * 4 (finding prejudice where defendants were forced to expend additional time, effort, and financial expense to seek out discovery responses from plaintiffs even after court ordered plaintiffs to respond); Dively, 2012 WL 1865414, at *4 (finding prejudice where plaintiff failed to respond or object to discovery requests, defendant sent multiple communications regarding such failure, defendant filed a motion to compel which plaintiff did not respond to, and plaintiff never responded to discovery after court granted motion); Grossberg, 1989 WL 56414, at *3 (finding prejudice where "Defendants have simply elected not to cooperate during the discovery phase").

## C.     Defendants' History of Dilatory Conduct.

The third factor requires this Court assess whether Ballard has acted consistently in a dilatory manner or whether his conduct is merely an isolated instance. See Poulis, 747 F.2d at 868. "Extensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." Briscoe v. Klaus, 538 F.3d 252, 260 (3d Cir. 2008) (quoting Adams v. Trustees of N.J. Brewery Emps.' Pension Trust Fund, 29 F.3d 863, 874 (3d Cir. 1994)).

Defendants' conduct throughout this litigation establishes a "history of dilatoriness" and a consistent unwillingness to comply with deadlines. Apart from the failures during discovery detailed at length above, Defendants did not make an appearance or file a response to the Complaint within the required time after being served. Instead, they sat back and did nothing for months, forcing FCC to incur the expense of filing for default and preparing a default judgment motion. Then, after this Court had already entered default against Defendants, Defendants filed a motion to re-open default.

This is not an isolated instance: a search of Delaware dockets shows Ballard was a party to approximately 50 suits and already has approximately 34 different judgments entered against him in Delaware alone totaling well over $1,000,000 - the vast majority of them by default. See Exhibit 1, Results of Delaware docket search. The vast majority of these judgments remain outstanding. See Exhibit 2, Results of Delaware judgment search. In particular:

- In June 2010, a church filed a complaint against Ballard for breach, theft of trust funds, fraud and replevin, alleging Ballard provided defective construction work, misappropriated over $300,000 in funds, issued unauthorized change orders, and stole the church's materials (including serpentine stone). See Exhibit 7, First Presbyterian Church of Smyrna, Del. v. Ballard Builders, et. al, Del. Super. Ct., Case No. K10C-06-016, Complaint filed 6/10/10. In that case, Ballard initially hired an attorney to enter an appearance and file some preliminary pleadings just as he has done here. However, just like in this case, Ballard's attorney withdrew shortly thereafter and was never replaced.

- 10 -

The church moved for and obtained a default judgment and an award of $643,663 in damages, which Ballard has never satisfied, necessitating the church incur the additional expenses associated with executing on the judgment. See Exhibit 8, First Presbyterian Church of Smyrna, Del. v. Ballard Builders, *et. al*, Del. Super. Ct., Case No. K10C-06-016, Docket.

- In May 2010, a bank sued Ballard for defaulting on a note and obtained a default judgment against Ballard for approximately $40,000. See Exhibit 9, Wilmington Trust Co. v. Ballard Builders, *et. al*, Del. Super. Ct., Case No. N10C-05-0123, Complaint filed 5/10/10; Exhibit 10, Wilmington Trust Co. v. Ballard Builders, *et. al*, Del. Super. Ct., Case No. N10C-05-0123, Docket. After the judgment was entered, the bank attempted to take Ballard's deposition to aid in the execution of judgment and then had to file a motion to compel. Ballard failed to appear for a deposition three different times. See Exhibit 11, 4/13/15 letter to judge. In May 2015, the Court issued an order holding Ballard in contempt and issued capias and set bail at $2,500. See Exhibit 10, Wilmington Trust Co. v. Ballard Builders, *et. al*, Del. Super. Ct., Case No. N10C-05-0123, Docket.

In both this litigation and others, Ballard has consistently acted in a dilatory manner. As such, this factor weighs in favor of the sanctions of default and dismissal. See, e.g., Grossberg, 1989 WL 56414, at *3 (finding history of dilatoriness where defendants were defaulted twice by a state court and then in federal court failed to cooperate with plaintiffs' discovery requests).

### D. **Defendants' Willful or Bad Faith Conduct.**

Under this factor, the Court must consider whether Defendants conduct was willful or bad faith. See Ogilvie, 2016 WL 3659943, at * 5. Willfulness involves intentional or self-serving behavior. Dively, 2012 WL 1865414, at *5.

Here, Defendants' above-discussed repeated failures rise above the level of mere negligence or inadvertence. Defendants' repeated failures in this case (and others) demonstrate a complete indifference to scheduling orders, discovery requests, orders of this Court, and orders of other Courts. Defendants have not even attempted to provide FCC nor the Court with any explanation for their failures to comply with the rules and this Court's Order. They failed to even bother to respond to FCC's Motion to Compel. As such, this factor weighs in favor of the

sanctions of default and dismissal.  See, e.g., Ware, 322 F.3d at 224 (absence of reasonable excuses suggest Defendants' conduct is willful and in bad faith).

E.	**Effectiveness of Alternative Sanctions.**

The fifth factor requires this Court to determine whether sanctions other than dismissal would be effective.  See Poulis, 747 F.2d at 869.  Where a party is not represented by counsel, "monetary sanctions may not be an effective alternative."  Ogilvie, 2016 WL 3659943, at *5 (citations omitted).  Indeed, such parties "often lack the ability to pay monetary sanctions."  Id. (citations omitted).

Defendants' history of foot-dragging and delay suggests that any sanction short of dismissal would not be effective.  Imposing monetary sanctions on Ballard would be futile.  Money judgments mean nothing to Ballard as the vast majority of the judgments entered against him in Delaware, totaling well over $1,000,000, remain outstanding.  See Exhibit 2, Results of Delaware judgment search.

Despite the threat of attorneys' fees in this case, Defendants failed to either produce responses to the Discovery Requests or comply with this Court's Order.  This Court has already imposed monetary sanctions on Defendants.  [ECF No. 35].

Even the threat of jail has failed to induce Ballard to comply with his discovery obligations.  See Exhibit 10, Wilmington Trust Co. v. Ballard Builders, *et. al*, Del. Super. Ct., Case No. N10C-05-0123, Docket.

Court orders and monetary sanctions mean nothing to Ballard.  There is no alternative sanction that this Court can impose that will work.  As such, this factor weighs in favor of default and dismissal.

**F.     The Meritoriousness of the Claim or Defense**

Finally, this Court must consider the meritoriousness of the claim or defense. See Poulis, 747 F.2d at 870. Claims are deemed meritorious if, the allegations, if established at trial would support recovery by the plaintiff. See id.

Here, the Complaint alleges that with the specific intent to induce FCC into contracting with Exeter, Ballard made numerous false representations to FCC regarding Defendants' expertise, qualifications and experience in the design and construction of manufacturing facilities like the Project. See Complaint [ECF No. 1] at ¶¶ 19-37. The Complaint also details Exeter's numerous contractual breaches and the resultant damages suffered by FCC. See id. at ¶¶ 38-88. As such, accepting FCC's Complaint's well-pleaded factual allegations as true, FCC has asserted four meritorious causes of action - fraudulent inducement, breach of contract, breach of warranty and specific performance. Defendants have already recognized as much by not filing a motion to dismiss any of FCC's claims.

On the other hand, even accepting the allegations contained in Exeter's Counterclaim as true, none of its claims state a claim upon which relief can be granted. As FCC has already made clear: (i) all of Exeter's claims are barred by releases signed by Exeter; (ii) Exeter's claims for breach of contract and violation of the Pennsylvania's Contractor and Subcontractor Payment Act must be dismissed because: (a) Exeter failed to comply with the Contract's requirements for amending and modifying the Contract; and (b) no payment is due Exeter because Exeter failed to comply with the Contract's conditions precedent for payment; and (3) Exeter's unjust enrichment claim must also be dismissed because the parties' relationship is governed by an express contract. See FCC Brief in Support of Motion to Dismiss Exeter's Counterclaim [ECF No. 23].

As such, this factor weighs in favor of the sanctions of default and dismissal. See, e.g.,

Grossberg, 1989 WL 56414, at *3 (finding plaintiffs' claim was meritorious and entering default judgment on plaintiffs' complaint and dismissing defendants' counterclaim as sanctions for defendants refusal to comply with discovery requests or court's order compelling discovery responses).

## CONCLUSION

For all the foregoing reasons, FCC respectfully requests that, in accordance with Rules 37(b)(2)(A) and 41(b) of the Federal Rules of Civil Procedure, the Court enter an order that: (i) enters a default judgment against Defendants on FCC's Complaint; (ii) dismisses Defendant Exeter's Counterclaim with prejudice; (iii) awards FCC the expenses and attorney's fees it incurred in connection with this Motion for Sanctions pursuant to Rule 37(b)(2)(C); and (iv) schedules a non-jury hearing to determine the damages due FCC, including punitive damages and attorneys fees. Alternatively, this Court should modify its Initial Scheduling Order and extend the discovery period (and all remaining deadlines) by an additional ninety days to allow FCC additional time to conduct fact discovery.

Dated: October 26, 2016

/s/ William D. Wickard
Jason L. Richey, Esquire
Pa. I.D. # 78943
William Wickard, Esquire
Pa. I.D. # 87741

K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, Pennsylvania 15222
Tel.: (412) 355-6500

*Counsel for Plaintiff*
*Federal Carbide Company*

**CERTIFICATE OF SERVICE**

      I hereby certify that on October 26, 2016, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to the following individuals and all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

      Matthew Jameson, III, Esq.
      Robert M. Palumbi, Esq.
      Babst, Calland, Clements and Zomnir, P.C.
      Two Gateway Center, 7th Floor
      603 Stanwix Street
      Pittsburgh, PA  15222

The following individual will be served by regular U.S. mail:

      Dennis B. Ballard
      371 Commerce Street
      P.O. Box 347
      Cheswold, Delaware  19936

      And

      415 S. Carter Road
      Smyrna, Delaware  19977

      /s/ William D. Wickard